**EVANSTON INSURANCE COMPANY**

v.

**AFFILIATED FM INSURANCE COMPA-
NY and Robert Coughlin, Jr.**

**Civ. No. H–81–884.**

United States District Court,
D. Connecticut.

Feb. 1, 1983.

Jeffrey A. Blueweiss, Dennis M. Lacca-
vole, Bai, Pollock & Dunnigan, Bridgeport,
Conn., for plaintiff.

John A. Danaher, III, Day, Berry & How-
ard, Hartford, Conn., for defendants.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

CLARIE, Senior District Judge.

The plaintiff has moved, pursuant to Fed.
R.Civ.P. 56, for summary judgment, seeking
declaratory judgment and damages, and the
defendant has filed a cross motion for sum-
mary judgment. The issues presented are:
(1) whether the defendant is collaterally
estopped by a recent decision against it in
the United States District Court, Eastern
District of Pennsylvania; and (2) if collater-
al estoppel does not apply, how would the
Connecticut courts rule on the conflict of
primary coverage between an "occurrence"
insurance policy and a "claims made" policy.
The Court finds that the doctrine of collat-
eral estoppel does not apply, and that Con-
necticut law would find consistent with the
reasoning of the Pennsylvania District
Court in *Affiliated FM Insurance Company
v. The Mutual Fire, Marine and Inland In-
surance Company,* No. 80–2680 (E.D.Pa.
Oct. 14, 1981), and a similar prior decision of
a California appellate court, *Chamberlin v.
Smith,* 72 Cal.App.3d 835, 140 Cal.Rptr. 493
(1977). The Court accordingly finds that
Affiliated FM Insurance Company, the de-

fendant that issued the occurrence policy, is responsible for defending and indemnifying the insured, Robert Coughlin, Jr. The plaintiff's motion for summary judgment is accordingly granted, and the defendant's cross motion is denied.

### Facts

In September, 1976, Robert Coughlin, Jr., a licensed real estate agent in Connecticut, was involved in the sale of real property to William Doherty. While showing said property for sale, Coughlin allegedly represented that a septic system was present and located in a particular spot, when in fact, no septic system existed. On July 1, 1980, Coughlin was sued by William Doherty in the Superior Court of Connecticut, at Hartford, for his alleged negligent misrepresentation. That case, *Doherty v. Coughlin* No. 247038, is still pending and the plaintiff insurance company, Evanston, is presently providing a defense for Robert Coughlin, Jr. Evanston now seeks a declaratory judgment, that the defendant Affiliated must defend or indemnify Coughlin, and provide reimbursement for the costs and attorneys' fees incurred in its defense of Coughlin to date.

The policy issued by the defendant, Affiliated FM Insurance Company, covered professional errors and omissions made by Coughlin, between the effective dates of December 18, 1974 and December 18, 1976. The alleged negligence occurred in September, 1976, within the coverage period of Affiliated. Separate from the coverage and definition sections of said policy, Affiliated's insurance agreement contained, in paragraph IX, an "other insurance" clause: "If the insured has other insurance against loss covered under this policy, this insurance shall apply as excess of such insurance." Affiliated contends that the Evanston policy is effectively "other insurance" and that accordingly, Affiliated is liable merely as an excess carrier and not for the primary indemnification and defense of Robert Coughlin, Jr.

The Evanston policy, on the other hand, contains the following language, under the heading "THE COVERAGE":

"To pay on behalf of the Insured all sums in excess of the deductible amount stated in the declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD:

(a) By reason of any act, error or omission in professional services rendered or that should have been rendered by the insured or by any person for whose acts, errors or omissions the insured is legally responsible, and arising out of the conduct of the insured's profession as a real estate agent or broker . . .

PROVIDED ALWAYS THAT such act, error or omission or such personal injury happens:

(a) During the policy period, or

(b) Prior to the policy period provided that . . . there is no prior policy or policies which provide insurance for such liability or claim resulting from such act, error, omission or personal injury whether or not the available limits of liability of such prior policy or policies are sufficient to pay any liability or claim or whether or not the deductible provisions and amount of such prior policy or policies are different from this policy."

This agreement, often termed a "claims made" policy, covered the period of March 13, 1980 to March 13, 1981; Coughlin was sued on July 1, 1980, within the period of coverage by the plaintiff Evanston. Evanston contends, however, with respect to the proviso stated in its coverage, that the Affiliated policy constitutes a "prior policy" which provides insurance for Coughlin's alleged negligence, and as such the defendant Affiliated has the responsibility to indemnify and defend Coughlin for the negligence that allegedly occurred within the period of Affiliated's "occurrence" coverage.[1]

---

1. There has been no suggestions that the policy amount limits of either policy separately will be

insufficient to meet any potential judgment in the underlying state court action against Rob-

All of the above facts are undisputed; no material issues of fact remain.

### Discussion of Law

Evanston contends that Affiliated is collaterally estopped by the terms of a prior judgment against it, in *Affiliated FM Insurance Company v. The Mutual Fire, Marine and Inland Insurance Company*, No. 80–2680 (E.D.Pa. Oct. 14, 1981). That case presented a conflict between an "occurrence" policy issued by Affiliated, identical to the policy Affiliated issued in the instant case, and a "claims made" policy issued by Mutual Fire, identical in all relevant respects to the Evanston "claims made" policy involved in the instant case. There, the alleged negligence occurred during the coverage period of the occurrence policy and a suit was subsequently filed within the coverage period of the claims made policy. The Court held that in such a conflict, Affiliated, the insurer issuing the occurrence policy, must defend and indemnify the alleged tortfeasor.

Evanston represents that the issue decided by the Pennsylvania District Court in that case is identical to the issue presented here; and because the same issue was fully and fairly litigated by Affiliated in the previous case, Affiliated should now be collaterally estopped from relitigating it here. Evanston seeks to use collateral estoppel offensively, as a "sword," which they contend was authorized by the Supreme Court in *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

While *Parklane Hosiery* did authorize the use of collateral estoppel offensively, it did so under certain strict guidelines: where the prior decision is a final judgment on the merits, where the issue decided in the first case is identical to that presented in the second, where the present plaintiff could not have joined in the previous action, and where the defendant "has had every incentive to litigate the [issue] fully and

vigorously." *Parklane Hosiery, supra,* at 332, 99 S.Ct. at 652. While most of these criteria are met in this case, it is not true, however, that the identical question of how Connecticut courts would treat the issue, was previously litigated in the District Court in Pennsylvania. As that Court stated: "[The] Court is . . . required to embark upon the unenviable task of predicting how the appellate courts of Pennsylvania would approach the problem." In the instant case, this Court, acting pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, is called upon to determine how the courts of Connecticut would answer this conflict. Since the prior case presented a question of Pennsylvania law, the instant case does not pose "an identical issue" within the meaning of *Parklane Hosiery. Id.* at 326, 99 S.Ct. at 649. Accordingly, the doctrine of collateral estoppel is inapposite to the resolution of the issues in this case.

The question thus becomes how the courts of Connecticut would rule on this issue of conflicting "occurrence" and "claims made" policies. Neither party has offered any Connecticut case law explicitly addressing this question, nor has the Court discovered any. Affiliated represents that under Connecticut law the Court should find that the plain language of the policies imposes liability on Evanston. It argues that the Evanston policy seeks to avoid liability through an "escape" clause, which should be disfavored and thus disregarded under Connecticut law. Alternatively, Affiliated argues that the Court should determine that the two policies are irreconcilable and "mutually repugnant" and accordingly, following Connecticut law, the Court should equitably prorate the liability between the two companies.

Any analysis must begin with an examination of the two policies, as written. In the Evanston policy, the section entitled "THE COVERAGE" sets forth two different principles for determining when the claims made coverage is available to the

ert Coughlin, Jr., and accordingly, the Court does not address the question of "excess" coverage.

insured. The first situation is when a negligent act occurs during the policy period. There are no limitations on coverage when a negligent act occurs during this period. When the negligent act occurs prior to the effective date of the policy period, however, coverage extends only when there is no other policy that can provide coverage. In this case there was another, prior policy that provided coverage, namely the occurrence policy issued by Affiliated. An examination of that policy shows that its "COVERAGE AFFORDED" section, by its terms, requires Affiliated to provide coverage when, as here, the negligent act occurs during the policy period. There are no exceptions, applicable to this case, stated in Affiliated's "COVERAGE AFFORDED" section.

On the face of the coverage sections of the two policies, then, Affiliated is responsible for defending and indemnifying the insured, Robert Coughlin, Jr. Affiliated makes two additional arguments, however. First, it points to paragraph IX of its policy, an "other insurance" clause, which, it argues, commits it to providing merely excess coverage whenever other insurance is available. It is clear from an examination of the coverage of the two policies, however, that other insurance, at least so far as that might be represented by Evanston's policy, is not available here, and accordingly paragraph IX does not relieve Affiliated of its duty to defend and indemnify the insured. Second, Affiliated argues that Evanston's coverage section, which excludes coverage of prior negligence when prior coverage exists, presents an "escape" clause which should be disregarded. While there is a trend to disfavor escape clauses, *see, e.g. Insurance Co. of North America v. Continental Casualty Co.*, 575 F.2d 1070, 1072 (3d Cir.1978); *Employers Reinsurance v. Mission Equities Corp.*, 74 Cal.App.3d 826, 830 n. 1, 141 Cal.Rptr. 727, 730 n. 1 (1978), it must first be determined whether in fact the policy here presents such a clause. On this issue, the Court finds the reasoning and analysis of the California Court of Appeal, in *Chamberlin v. Smith*, 72 Cal.App.3d 835, 140 Cal.Rptr. 493 (1977), to be highly persuasive. In that case, the Reserved Insurance Company had issued a malpractice policy which, in its coverage section, contained a "prior policy" proviso identical to Evanston's in the instant case. Addressing whether such a proviso acted as an escape clause, the Court stated:

> "[T]he deliberate statement in the 'INSURING AGREEMENTS' part of the Reserve policy that there will be no coverage for an act, error or omission that occurred prior to the effective date of the policy if there is other insurance *is not an escape clause, it is an exception from coverage.* Moreover, it is reasonable not to provide coverage where the act, error or omission occurred during the life of an earlier policy. After all, Reserve could have provided no coverage at all for acts, errors or omissions occurring prior to the effective date of its policy...."

.  .  .  .  .

It is well recognized that an insurance company has an unquestionable right to limit the coverage of the policy issued by it; and when it has done so, the plain language of the limitation must be respected." *Id.* at 850, 140 Cal.Rptr. at 501, 502 (Emphasis added).

■ This Court finds the above reasoning compelling in the field of "claims made" malpractice policies. Such policies extend coverage beyond that of ordinary policies to all claims made during the life of the policy, even if the negligence on which a claim is based occurred prior to the commencement of the policy. It is logical and reasonable, from the point of view of both the insurer and the insured, that such coverage would not be extended to acts already covered by prior policies. "Claims made" premiums are undoubtedly structured to reflect this explicit exclusion of coverage. Absent some policy to the contrary, an insurance company is of course entitled to create such an exclusion and the defendant Affiliated has pointed to no such contrary policy. The proviso contained in Evanston's coverage section is not a post hac escape clause, but rather an explicit, initial exclusion from coverage. The line of cases which have

disregarded escape clauses is not applicable here.

■ The Court finds that the Connecticut courts would follow the precedents established by both the United States District Court, Eastern District of Pennsylvania, and the California Court of Appeal on this issue, and would find persuasive the decisions in *Affiliated FM Insurance Company v. The Mutual Fire, Marine and Inland Insurance Company*, No. 80–2680 (E.D.Pa. Oct. 14, 1981) and *Chamberlin v. Smith*, 72 Cal.App.3d 835, 140 Cal.Rptr. 493 (1977). The obligation to defend and indemnify the insured, Robert Coughlin, Jr., rests with the defendant, Affiliated, which issued the "occurrence" policy, rather than with the plaintiff, Evanston, which subsequently issued a "claims made" policy. Accordingly, the plaintiff's motion for summary judgment is granted, and the defendant's cross motion for summary judgment is denied.

SO ORDERED.