ASSOCIATED PHYSICIANS INSURANCE COMPANY, Plaintiff-Appellee, v. INNO U. OBASI *et al.*, Defendants-Appellants (Hedd Surgi-Center, Inc., Defendant).

First District (1st Division)   No. 1—91—3830

Opinion filed September 7, 1993.—Rehearing denied April 11, 1994.

Hofeld & Schaffner, of Chicago (James N. Karahalios, of counsel), for appellant Michelle R. Patterson.

No brief filed for appellant Inno U. Obasi.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Anthony P. Katauskas, and Lloyd E. Williams, Jr., of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from a declaratory judgment action brought by plaintiff Associated Physicians Insurance Company against defendant Michelle R. Patterson and codefendants Dr. Obasi and Hedd Surgi-Center, Inc. in order to determine its insurance obligations to Dr. Obasi with respect to a claim asserted by defendant. The circuit court granted summary judgment in favor of plaintiff and against defendant and codefendants. Defendant now appeals. We reverse and remand the cause.

Plaintiff initially issued a claims-made medical malpractice insurance policy to Dr. Obasi retroactive to January 1, 1988, with a policy period to expire on January 1, 1989. Then, on January 1, 1989, plaintiff renewed that policy to be effective until January 1, 1990. There are several provisions in that policy that are relevant to the case at bar. Those policy provisions are set forth below.

The coverage agreement of the policy provides that plaintiff

"will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as COMPENSATORY DAMAGES because of any CLAIM or CLAIMS first made against the insured during the POLICY PERIOD because of PERSONAL INJURY arising out of the rendering of or failure to render, on or after the RETROACTIVE DATE, PROFESSIONAL SERVICES in the practice of the NAMED INSURED'S profession as a physician."

A "Claim" as defined in the policy is:

"a demand for money or services from the INSURED as a result of actual or alleged PERSONAL INJURY covered by this policy and includes the service of suit, receipt of notice of arbitration proceeding, or receipt of notice of Attorney's Lien."

According to the policy, a "Claim First Made" means:

"all of the following happened: (1) a CLAIM has been received, for the first time, by the INSURED during the POLICY PERIOD or immediately prior to the POLICY PERIOD at a time when said INSURED was covered under a prior professional liability policy issued by the Company which has been renewed by this policy; and (2) the Company has received immediate written notice of said CLAIM from the INSURED or the INSURED'S representative during the POLICY PERIOD in compliance with the Provisions of Article VII, Paragraph 4 of this policy. Only upon the happening of (1) and (2) above will a CLAIM be considered to be a CLAIM FIRST MADE under this policy"

The "Policy Period" is the period of time which "commences with the policy effective date and ends with the expiration date." The policy also states that if plaintiff wishes to cancel the policy and it

"has been in force for sixty (60) days or more the Company shall give the NAMED INSURED sixty (60) days written notice of such cancellation."

The last policy provision which is relevant to the instant case is the one concerning the insureds right to purchase a reporting endorsement. Under the policy:

"In the event of termination of insurance by either non-renewal or cancellation of [the policy] for any reason other than death, permanent DISABILITY, or RETIREMENT of [Dr. Obasi], [Dr. Obasi] *** shall have the right upon payment of an additional premium, to be computed in accordance with the Company's rules, rates, rating plans and premiums applicable on the effective date of this policy, to have a Reporting Endorsement issued extending the period in which CLAIMS, otherwise covered by the policy may be reported."

On September 7, 1989, while performing an operation, Dr. Obasi erroneously cut the artery of Synthia Dennard, who then bled to death on the operating table. Dr. Obasi sent a written report of the above occurrence to plaintiff on September 12, 1989. Then, on September 22, 1989, while performing an operation on defendant, Dr. Obasi perforated her uterus. Defendant was taken to a hospital where she underwent a life-saving complete hysterectomy.

On October 12, 1989, the estate of Dennard filed suit against Dr. Obasi. Thereafter, on October 23, 1989, Henry Nussbaum of plaintiff notified Dr. Obasi by telephone that plaintiff intended to issue a notice of policy nonrenewal to him. On October 25, 1989, the Illinois Department of Professional Regulation (Department) summarily suspended his medical license pending a hearing. Plaintiff never sent Dr. Obasi the notice of nonrenewal, but on October 27, 1989, it did send him a formal notice of policy cancellation. That notice stated that Dr. Obasi's insurance would be cancelled effective December 1, 1989, and further informed him that he had the right to obtain a reporting endorsement not later than 30 days after the policy termination/expiration date. Additionally, Nussbaum sent Dr. Obasi a separate letter on October 27, 1989, stating that since the basis for the cancellation related directly to the quality of his medical practice, Dr. Obasi could request a meeting with plaintiff's physician panel within 30 days of the letter in order to seek reconsideration of the cancellation. Dr. Obasi did not seek such reconsideration or attempt to purchase a reporting endorsement.

On October 30, 1989, Dr. Obasi and his privately retained attorney, Kent Brody, appeared for a hearing at the Department of Professional Regulation. Plaintiff's claims manager Susan Portnoy

and attorney Howard Lieber, hired by plaintiff to defend Dr. Obasi in the Dennard suit, were also present. Portnoy was given a copy of the Department's written complaint and discovery materials, including defendant's medical records. On November 3, 1989, Portnoy attended a Department of Professional Regulation hearing, during which sworn testimony was given about defendant's matter. Plaintiff's representatives were also present at a meeting during which the Dennard suit and defendant's matters were discussed.

On December 6, 1989, defendant filed her suit against Dr. Obasi alleging medical malpractice. Dr. Obasi was served with the complaint on January 16, 1990. Portnoy was present at the time of service and was immediately given a copy of the complaint. On January 18, 1990, Portnoy wrote a letter to Dr. Obasi rejecting indemnity and defense of defendant's suit. The letter stated that Dr. Obasi's insurance had been cancelled effective December 1, 1989, and defendant's claim "was received more than 30 days after cancellation was effective and no reporting endorsement was purchased."

On May 10, 1990, plaintiff filed the declaratory judgment action which gives rise to this appeal. Plaintiff then filed a motion for summary judgment in that action. The circuit court ordered summary judgment in favor of plaintiff and against defendant and codefendants, finding:

> "[T]he claim made by defendant MICHELLE R. PATTERSON against DR. INNO U. OBASI, M.D., and HEDD SURGI-CENTER, as set out in the complaint *** is not a 'claim first made' within the term of Policy No. 89—01—1432—01 issued by plaintiff ASSOCIATED PHYSICIANS INSURANCE COMPANY, and this policy affords no coverage to defend or indemnify DR. OBASI with respect to any claims of any kind whatsoever arising out of any of the events that form the subject matter of the above described lawsuit filed by MICHELLE R. PATTERSON in the 89 L 17575 case."

Defendant appeals from that order.

When reviewing an appeal from an order granting summary judgment, we must determine whether there is a genuine issue of material fact. (*Demos v. National Bank of Greece* (1991), 209 Ill. App. 3d 655, 567 N.E.2d 1083.) Thus, the summary judgment order can only be affirmed if the "pleadings, depositions, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c) (now 735 ILCS 5/2—1005(c) (West 1992)); *Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 494 N.E.2d 830.) To defeat

summary judgment, defendant must raise more than one inference from a material fact. *Lassai v. Holy Cross Hospital* (1991), 224 Ill. App. 3d 330, 586 N.E.2d 586.

■ First, defendant argues that the circuit court erred in not finding the attempted cancellation of the policy null and void. Dr. Obasi's medical malpractice policy was first issued by plaintiff for the period of January 1, 1988, to January 1, 1989. That policy was then renewed for the period of January 1, 1989, to January 1, 1990. As of October 27, 1989, the date the notice of attempted cancellation was mailed, that policy had been in effect for well over 60 days. Under the terms of the policy and under the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 613 *et seq.* (now 215 ILCS 5/1 (West 1992))), any notice of cancellation of the policy required giving Dr. Obasi 60 days' advance notice of the effective date proposed for cancellation. The notice of cancellation sent by plaintiff was dated October 27, 1989, and proposed December 1, 1989, as the effective date of cancellation. Therefore, the cancellation letter gave Dr. Obasi only 34 days' notice. Such notice is insufficient according to plaintiff's own policy provision as well as Illinois statutory law. See Ill. Rev. Stat. 1989, ch. 73, par. 755.16 (now 215 ILCS 5/143.16 (West 1992)).

In *Kerr v. Pusateri* (1965), 64 Ill. App. 2d 172, 175-76, 212 N.E.2d 263, 265-66, the appellate court held that, when the

> "testimony and evidence clearly shows that there was noncompliance with the terms and provisions of the policy governing cancellation and without strict compliance with the cancellation provisions there could be no valid cancellation by either the insured or the insurer."

Since plaintiff's attempted cancellation of Dr. Obasi's policy did not comply with the provisions of that policy or even the Illinois Insurance Code, we find that it is null and void. Because the cancellation is null and void, Dr. Obasi's policy was effective until it expired on January 1, 1990. As a result of this finding, defendant's issue of whether the cancellation was or was not unconscionable is moot.

■ Plaintiff argues, however, that even if the cancellation is null and void and the policy was effective until it expired, defendant's claim still was not a "claim first made" under the policy. We agree. Nevertheless, this finding does not preclude defendant's claim from coming under the policy. We have already found that Dr. Obasi's insurance was effective until it expired by its own terms on January 1, 1990, and that plaintiff refused to renew the policy. According to the terms of the policy, in the event of termination by nonrenewal, Dr. Obasi had the right to purchase a reporting endorsement. After receiving a copy of defendant's suit, plaintiff denied indemnity and

defense of the claim. Plaintiff asserted that the claim was not covered by the policy, reasoning that it was received more than 30 days after cancellation was effective and Dr. Obasi failed to purchase a reporting endorsement. Since we have already found that plaintiff's attempted cancellation was null and void, Dr. Obasi had until January 31, 1990, to purchase a reporting endorsement. Plaintiff's January 18 letter denying coverage also impliedly stated that it would not allow Dr. Obasi to purchase a reporting endorsement. Thus, we find that plaintiff misinformed Dr. Obasi of his rights, and that he should have been afforded the opportunity to purchase the endorsement.

■ Next, plaintiff argues that even if Dr. Obasi had purchased the endorsement, the claim would not have been covered because it was not "otherwise covered by the policy" since plaintiff did not receive the claim within the policy period. Plaintiff asserts that the reporting endorsement would only extend the time for which Dr. Obasi could report claims he had received through service of suit or receipt of notice of arbitration or attorney's lien prior to January 1, 1990. The endorsement would not extend the time during which defendant could be served with suit. According to plaintiff's above interpretation of the endorsement provision, since Dr. Obasi was not served with defendant's lawsuit until after January 1, 1990, the claim in that suit was not received by Dr. Obasi within the policy period, and the purchase of an endorsement would not have any effect on that fact. To construe the reporting endorsement provision to mean the above indicates that it is, at best, ambiguous. It is unlikely that any insured would pay an additional premium so that he could take an extra 30 days to hand the claim over to plaintiff. Moreover,

> "[i]n case of ambiguity a reasonable construction of the language which affords coverage should be adopted. [Citation.] Since the insurer has drafted the policy, if any possible ambiguity exists it should be construed against the insurer."

A reasonable construction of the reporting endorsement provision is that it extends the policy period for the purpose of extending the time during which Dr. Obasi could be served with a lawsuit containing a claim for compensatory damages for a personal injury arising out of Dr. Obasi's rendering of professional services after the effective date of the policy but prior to the expiration date. This court, along with its *de novo* review of the order granting summary judgment, is entitled to "independently construe the contract unrestrained by the trial court's judgment." (*Zale Construction,* 145 Ill. App. 3d at 240, 494 N.E.2d at 833.) Therefore, we hold that the circuit court erred in finding that plaintiff was entitled to judgment as a matter of law, because where an ambiguity in a contract appears, in-

terpretation becomes a question of fact. See *UIDC Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 490 N.E.2d 164.

Defendant has raised more than one inference from several issues of material fact and, therefore, for the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this cause.

Reversed and remanded.

MANNING, P.J., and CAMPBELL, J., concur.