No.  2--96--1154

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT 

_________________________________________________________________

KEVIN GRAEME SMITH
 and CERTAIN  )  Appeal from the Circuit

OTHER UNDERWRITERS AT LLOYD'S  )  Court of Du Page County.

LONDON,  )

  )

Plaintiffs and Counter-  )

defendants-Appellees,  )  96--MR--0082

    )  

v.  )

  )

CARL A. NEUMANN,  )

  )

Defendant and Counter-  )

plaintiff-Appellant  )  Honorable 

  )  John W. Darrah,

(Arnstein and Lehr, Defendants).)  Judge, Presiding.

_____________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Carl A. Neumann, appeals from the order of the circuit court of Du Page County granting summary judgment to plaintiffs, Kevin Graeme Smith and other underwriters at Lloyd's London.  On appeal, defendant contends that the trial court erred in finding that the provisions within clause (bb) of plaintiffs' insurance policy precluded defendant from receiving insurance coverage.  We affirm.

The record on appeal reveals the following facts.  In 1985, defendant was a partner at the law firm of Arnstein & Lehr.  One of defendant's clients was Indeck Energy Services, Inc. (Indeck).  Defendant provided legal services for Indeck beginning in 1985.  While at Arnstein & Lehr, defendant drafted an employment agreement and a shareholders' agreement for Indeck.  Shortly thereafter, Indeck hired Michael Polsky to be its chief executive officer.  Indeck and Polsky entered into the employment agreement and shareholders' agreement that had been drafted by defendant.  The agreement allowed Polsky to acquire stock shares in Indeck.

On November 30, 1987, defendant resigned from Arnstein & Lehr, and on December 1, 1987, defendant became a partner at Keck, Mahin & Cate (Keck).  At Keck, defendant continued to perform legal services for Indeck.

In August 1990 Indeck gave Polsky notice of its intent to terminate Polsky's employment, effective in September 1990.  In 1991 this employment dispute was submitted to the commercial arbitration tribunal.  The arbitration also addressed Polsky's rights under the related shareholders' agreement.  Indeck was represented at the arbitration by defendant and another Keck attorney, Steven Adelman.  

On November 27, 1991, the arbitrator found that Indeck's termination of Polsky violated the terms of the employment agreement.  The arbitrator awarded Polsky approximately $21.6 million in compensatory damages and for redemption of Polsky's Indeck stock pursuant to the shareholders' agreement.

Following the results of the arbitration, in or about April 1992, Indeck terminated the services of Keck, defendant, and Adelman.  Indeck also refused to pay outstanding invoices for work performed by defendant and Keck in the Polsky arbitration.

On April 8, 1992, defendant and representatives of Indeck and Keck met at Indeck's offices to discuss Keck's unpaid billing invoices.  At that meeting, Indeck claimed that Keck and defendant had committed professional malpractice.  Indeck presented Keck and defendant with a written list identifying alleged instances of malpractice.  With regard to purported malpractice in professional services performed by defendant while he was employed by Arnstein & Lehr, Indeck alleged with respect to the Polsky matter:

"6.  Substance of Shareholders Agreement.  Failure to have minority shareholder discount provision or even to discuss it with the client."

On April 28, 1992, written notice of a potential claim by Indeck for professional malpractice was given to Keck and defendant's professional liability insurer, Attorney's Liability Assurance Society, Inc. (ALAS).  Attached to the notice was the list of alleged errors that defendant received at the April 8, 1992, meeting.  ALAS acknowledged the Indeck claim in May 1992 and has provided insurance coverage to Keck and defendant for the entire claim, without any reservation of rights.

In November 1993 Indeck tendered to Keck, defendant, and Adelman a proposed agreement to toll the statute of limitations.  The proposed tolling agreement was also forwarded to ALAS on or before November 12, 1993.  Defendant signed the tolling agreement on November 18, 1993.  Defendant was specifically named a party to this agreement, "individually and as present or former partner of the law firm [Keck]."  The agreement purports to toll "any and all statute of limitations and statute of repose which would otherwise expire *** between Indeck and Keck."  

On October 14, 1994, Indeck filed suit in the Lake County circuit court against Keck, Adelman, and defendant.  In its second amended complaint, Indeck alleged acts of professional malpractice committed by Keck, Adelman, and defendant from 1985 to 1992.  

On October 28, 1994, Lawrence Wojcik, a partner at Keck, transmitted a photocopy of the original Indeck complaint to Arnstein & Lehr.  On October 31, 1994, Arnstein & Lehr forwarded a copy of the complaint to its insurance broker, Rollins Hudig Hall of Illinois, Inc.  On August 28, 1995, defendant sent a letter to Arnstein & Lehr's insurance broker, requesting that plaintiffs coordinate their defense and indemnity obligations with defendant's and Keck's defense counsel.

Defendant is insured for the Indeck claim under an ALAS policy issued to Keck effective from April 1, 1992, to April 1, 1993.  In addition to insuring defendant for claims arising out of professional services he performed while at Keck, the ALAS policy contains a "prior acts endorsement," providing coverage for defendant while he is a partner at Keck, for claims made against him "by reason of any ACT" committed "in his *** professional capacity as an Attorney, Counselor of Law or Notary prior to such assured becoming a partner or employee of the FIRM."  Thus, the ALAS policy covers defendant for claims made while defendant is a partner at Keck, by reason of his acts at Arnstein & Lehr or any other firm where he may have been employed before he became a partner at Keck.

Defendant admitted in both the present case and the underlying Indeck action that ALAS covered him for all acts, errors, or omissions in the underlying Indeck suit without a reservation of rights.

On January 25, 1996, plaintiffs denied coverage to defendant for the claims made against him in the Indeck action.  On February 1, 1996, plaintiffs filed a complaint against defendant and Arnstein & Lehr, seeking the trial court's declaration that they have no obligation to defend or indemnify defendant in the Indeck action.  

On June 4, 1996, plaintiffs moved for summary judgment; defendant moved for summary judgment the following day.  Defendant submitted his own affidavit in response to plaintiff's motion for summary judgment.  

In the present case, in his counterclaim, defendant seeks coverage under plaintiffs' policies for his acts, errors, or omissions at Arnstein & Lehr under one primary and two excess policies of insurance effective from May 4, 1994, to May 4, 1995.  The two excess policies are "subject to the same warranties, terms and conditions" that are contained in the primary policy.  The "Declarations Page" of plaintiffs' primary policy identifies the "Named Insured" and "the Insured" as follows:

"1.  The Insured:  The unqualified word, 'Insured,' whenever used in this policy means:

a. the Named Insured firm or predecessor firm set forth in the Declarations;

***

c. any former partner, officer, director or stockholder employee of the firm or predecessor firms named in the Declarations while acting solely in a professional capacity on behalf of such firms."

The insuring agreement of plaintiff's primary policy reads as follows:

"1.  The Coverage

Professional Liability and Claims Made Clause
:  To pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD:

a.  by reason of any act, error or omission in professional services rendered or that should have been rendered by the Insured ***

PROVIDED ALWAYS THAT such act, error or omission or such Personal Injury happens:

aa.  during the policy period, or 

bb.  prior to the policy period provided that, prior to the effective date of this policy:

1.  the Insured did not give notice to any prior insurer of any such act, error, omission or Personal Injury, and

2.  the Insured did not have a basis to believe that the act, error or omission or Personal Injury was a breach of professional duty or may result in a claim, and

3.  there is no prior policy or policies which provide insurance for such liability or claim, whether or not the available Limits of Liability of such prior policy or policies are sufficient to pay any liability or claim or whether or not the deductible provisions and amount of such prior policy or policies are different from this policy."

On August 30, 1996, after briefing and oral argument, the trial court ruled on the two motions.  The trial court first determined that all three clause (bb) conditions to prior acts coverage had to be satisfied.  The trial court then found that the terms "prior policy" and "prior insurer" of clause (bb) were plain and unambiguous.  The trial court stated:

"[T]he most obvious construction of prior insurer or prior policy is just that.  Any policy of insurance that was issued prior to the insurance carrying this clause is the most reasonable, straightforward and logical conclusion."

The trial court disagreed with defendant's argument that these terms had to apply to prior insurer or prior policies only of the named insured, Arnstein & Lehr, stating defendant's interpretation would "torture, if not commit a homicide on that phrase."

The trial court next addressed defendant's argument that clause (bb)(3) was an "unenforceable escape other insurance" clause.  The trial court found that clause (bb)(3) was not an escape other insurance clause, but rather an initial qualified extension of coverage.  The trial court relied on the following passage from 
Evanston Insurance Co. v. Affiliated FM Insurance Co.
, 556 F. Supp. 135 (D. Conn. 1983):

"It is logical and reasonable, from the point of view of both the insurer and the insured, that such coverage would not be extended to acts already covered by prior policies. 'Claims-made' premiums are undoubtedly structured to reflect this explicit exclusion of coverage."  
Evanston Insurance Co.
, 556 F. Supp. at 138.  

The trial court also addressed defendant's argument that the list of alleged professional errors that he received from Indeck did not constitute notice of each act, error, or omission in services performed at Arnstein & Lehr on which Indeck later sued.  The trial court found that defendant's argument that clause (bb)(1) should not apply because the list did not specifically list all drafting errors subsequently alleged in the claim "would turn this into Metaphysics 101."  

With respect to clause (bb)(2), the trial court found that because defendant

"was apprised on April 8, 1992, *** that there were drafting errors, albeit in failing to provide protection against the diminished value that a minority shareholder's shares always carry, that he should have either objectively or *** subjectively known that *** [a]n error or omission was a breach of a professional duty or may result in a claim."

The trial court granted summary judgment to plaintiffs on all three (bb) clauses, noting that "there's a failure to comply with all three in the conjunctive, although the failure as to any one would be dispositive on the issue of coverage."  Defendant timely appeals.

Nonpublishable material under Supreme Court Rule 23 omitted.

In the present case, both parties filed motions for summary judgment; thus, they invite this court to decide the issues presented as a question of law.  
Giannetti v. Angiuli
, 263 Ill. App. 3d 305, 312 (1994).  Summary judgment is properly granted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2--1005(c) (West 1994).  The use of the summary judgment procedure encourages the expeditious disposition of a lawsuit.  
Bryant v. Glen Oaks Medical Center
, 272 Ill. App. 3d 640, 649 (1995).  The purpose of summary judgment is not to try questions of fact, but to determine whether such questions exist.  
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 256 (1996).  Summary judgment should be granted only when the right of the moving party is clear and free from doubt.  
Guerino v. Depot Place Partnership
, 273 Ill. App. 3d 27, 30 (1995).   We review summary judgment orders 
de
 
novo
.  
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 285 Ill. App. 3d 115, 120 (1997).  An appellate court may affirm a summary judgment on any basis found in the record.  
Monticello Insurance Co. v. Wil-Freds Construction, Inc.
, 277 Ill. App. 3d 697, 701 (1996).  The issue before us in the present case involves the interpretation of an insurance policy and is, therefore, a question of law subject to 
de novo
 review.  See 
Oakley Transport, Inc. v. Zurich Insurance Co.
, 271 Ill. App. 3d 716, 720 (1995). 

On appeal, defendant first contends that the trial court erred in finding that clauses (bb)(1) and (bb)(3) precluded coverage for defendant for the Indeck complaint.  Defendant takes issue with the trial court's interpretations of the phrases "prior policy" and "prior insurer."  He contends that plaintiffs' failure to define the phrases created an ambiguity in the policy.  Defendant urges this court to find the phrases "prior policy" and "prior insurer" to mean prior policies and prior insurers of 
Arnstein & Lehr
, and not insurers of other law firms.  Defendant argues that his interpretation is consistent with the purpose of claims-made policies, 
i.e.
, to prevent "stacking" more than one claims-made policy in the same "stream of coverage," and that plaintiffs' interpretation would lead to an unlawful result, describing clause (bb)(3) an "unenforceable escape other insurance" clause.  In the alternative, defendant argues that, even if Keck's insurer, ALAS, was a "prior insurer," defendant did not give notice to ALAS in 1992 or 1993 of the alleged acts, errors, or omissions in drafting the employment agreement or the shareholders' agreement, rendering clause (bb)(1) inapplicable.  Defendant contends that the April 1992 letter to ALAS was merely to advise ALAS of criticisms leveled against Keck, and not defendant. 

Plaintiffs counter that "prior policy" and "prior insurer" are not ambiguous terms.  Plaintiffs argue that "prior policy" should be interpreted to mean prior policies and prior insurers of 
defendant
.  They contend that ALAS is defendant's prior insurer and the ALAS policy is defendant's prior policy.  They further argue that clause (bb)(3) is a valid qualified extension of prior acts coverage and not an "unenforceable escape other insurance" clause and that the "stream of coverage" was the sequence of policies insuring defendant.  Plaintiffs also contend that the present case does not present an "other insurance" situation because it does not involve competing, concurrent policies.  Moreover, plaintiffs argue that clause (bb)(1) bars coverage because defendant gave notice to ALAS prior to the effective date of plaintiffs' policies.  

An agreement reduced to writing must be presumed to reflect the intention of the parties who signed it.  
Western Illinois Oil Co. v. Thompson
, 26 Ill. 2d 287, 291 (1962); 
Central Illinois Public Service Co. v. American Empire Surplus Lines Insurance Co.
, 267 Ill. App. 3d 1043, 1048 (1994).  To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the contract in its entirety.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
 (
Outboard Marine Corp.
), 154 Ill. 2d 90, 108 (1992); 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
 (
Outboard Marine Corp. (II)
), 283 Ill. App. 3d 630, 649 (1996).  Illinois law governing the construction of insurance contracts dictates that, if a policy term is subject to more than one reasonable interpretation, any ambiguity must be construed in favor of the policyholder.  See 
Outboard Marine Corp.
, 154 Ill. 2d at 119-21.  Where the terms of an agreement are plain and unambiguous, a court must afford them their 
plain, ordinary, and popular meaning
.  
Outboard Marine Corp.
, 154 Ill. 2d at 108-09; see also 
Caterpillar, Inc. v. Aetna Casualty & Surety Co.
, 282 Ill. App. 3d 1065, 1071 (1996).  In addition, the absence of a definition does not render a policy term ambiguous, nor is it ambiguous simply because the parties can suggest creative possibilities for its meaning.  
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520, 529 (1995); 
Bruder v. Country Mutual Insurance Co.
, 156 Ill. 2d 179, 193 (1993).  The alternate interpretation must also be reasonable.  
Bruder
, 156 Ill. 2d at 193.  Although ambiguities in an insurance policy will be construed against the insurer, courts will not distort the language of a policy to create an ambiguity where none exists.  
Dixon Distributing Co. v. Hanover Insurance Co.
, 161 Ill. 2d 433, 441 (1994), citing 
Outboard Marine Corp.
, 154 Ill. 2d at 108-09.  Whether an ambiguity exists is a question of law for the trial court to determine.  
Central Illinois Public Service Co.
, 267 Ill. App. 3d at 1048.  

"A word generally has several meanings, even in the dictionary.  You have to consider the sentence in which it stands to decide which of those meanings it bears in the particular case, and very likely will see that it there has a shade of significance more refined than any given in the word."  Oliver Wendell Holmes, Jr., 
The Theory of Legal Interpretation
, 12 Harv. L. Rev. 417, 417 (1899).

Our analysis must begin with an examination of the policy, as written.  Subject to other terms and conditions, coverage is provided for all professional services rendered "during the policy period" or "prior to the policy period" provided that the three conditions precedent of clause (bb) set forth in subsections (1), (2), and (3) are satisfied.  We agree with the trial court's finding that, because the word "and" follows subsections (1) and (2), all three conditions must be met to receive coverage.  As a result, plaintiffs need not defend or otherwise indemnify defendant for the defense costs in the Indeck action should defendant fail to satisfy any one of the three clause (bb) conditions.

The trial court relied on 
Evanston Insurance Co.
 in its determination that ALAS was a prior insurer of defendant and that the ALAS policy was a prior policy providing coverage for the Indeck claim.  To that effect, the trial court found that defendant failed to satisfy subsections (1) and (3) of clause (bb).  We agree with the trial court that 
Evanston Insurance Co.
 is persuasive.  In 
Evanston Insurance Co.
, a real estate agent was sued for alleged negligent misrepresentation.  Evanston Insurance Company (Evanston) provided a defense for the agent, and subsequently Evanston sought a declaratory judgment to have Affiliated FM Insurance Company (Affiliated) defend or indemnify the agent and to reimburse Evanston for its defense costs.  Affiliated's policy contained an "other insurance" clause.  However, Evanston's policy, a claims-made policy, contained a provision such that the agent would be covered for acts that occurred 

"[p]rior to the policy period provided that *** there is no prior policy or policies which provide insurance *** resulting from such act, *** whether or not the available limits of liability of such prior policy or policies are sufficient *** or whether or not the deductible provisions and amount of such prior policy or policies are different from this policy."  
Evanston Insurance Co.
, 556 F. Supp. at 136.

In granting Evanston's motion for summary judgment, the court determined that Affiliated was a "prior insurer" of the agent; Evanston's proviso was not an "escape" clause, but, rather, a valid exclusion of coverage; and that Affiliated was obligated to defend the agent.  
Evanston Insurance Co.
, 556 F. Supp. at 138-39.

In the present case, we find no ambiguity in plaintiffs' coverage section with respect to "prior insured" and "prior policy."  In plaintiffs' policy, the section entitled "THE COVERAGE" sets forth two different principles for determining when the coverage is available to defendant.  No limitation on coverage is listed when a negligent act occurs during this period.  However, when the negligent act occurs prior to the effective date of the policy period, coverage extends only when no other policy can provide coverage.  In the present case, there was a prior insurer that provided coverage in a prior policy--ALAS and its policy.  Because we also agree with the trial court and courts of other jurisdictions that insurance companies have an unquestionable right to limit the coverage of their insurance policies, we determine that plaintiffs' clause (bb)(3) is a valid exclusion from coverage and not an "unenforceable escape other insurance" clause.  See 
Chamberlin v. Smith
, 72 Cal. App. 3d 835, 140 Cal. Rptr. 493 (1977); see generally Annotation, 
Event Triggering Liability Insurance Coverage as Occurring Within Period of Time Covered by Liability Insurance Policy Where Injury or Damage is Delayed--Modern Cases
, 14 A.L.R.5th 695 (1993) (discussing cases and providing examples in which courts have held liability insurance was not established for attorneys).

We also note the case of 
Associated Physicians Insurance Co. v. Obasi
, 262 Ill. App. 3d 343 (1994), a case we refer to solely for an excerpt of a policy provision.  According to Associated's policy, a "Claim First Made" means, 
inter alia
, that "a CLAIM has been received, for the first time, by the INSURED during the POLICY PERIOD or immediately prior to the POLICY PERIOD at a time when said INSURED was covered under a prior professional liability policy 
issued by the Company
 which has been renewed by this policy."  (Emphasis added.)  
Associated Physicians Insurance Co.
, 262 Ill. App. 3d at 344.  What this excerpt suggests to us is that an insurer may 
limit
 its scope of coverage by including appropriate language to the policy.  See also 
Outboard Marine Corp. (II)
, 283 Ill. App. 3d at 646-47 (discussing a "prior policy" provision).  In the present case, we find that the policy's unambiguous and plain meaning should be given effect.  Therefore, if plaintiffs intended to limit clause (bb) to prior policies of Arnstein & Lehr, they could have done so in a fashion similar to that of 
Associated Physicians Insurance Co.
  Because no limiting language as such exists in clause (bb)(3) of the present case, we decline to interpret clause (bb)(3) as limiting coverage to prior policies of Arnstein & Lehr.  

Because defendant failed to satisfy clause (bb) in its entirety, defendant in the present case is precluded from receiving insurance coverage from plaintiffs.  Typically, this would obviate the need to address defendant's other issues on appeal.  However, the dynamics of the present case necessitate further discussion.  Therefore, we will address each of defendant's issues in turn.   

Defendant argues alternatively that clause (bb)(1) is inapplicable because, even if Keck's insurer, ALAS, was a "prior insurer," ALAS received no notice of 
defendant's
 alleged drafting errors in the employment agreement or the shareholders' agreement until they were raised in the Indeck complaint filed in October 1994.  Defendant contends that the April 28, 1992, letter to ALAS was merely to advise ALAS of criticisms leveled against 
Keck
, and not defendant.  Plaintiffs argue that clause (bb)(1) bars coverage because defendant gave notice to ALAS prior to the effective date of plaintiffs' policies.  The trial court found that Keck's April 28, 1992, notice to ALAS of potential claims raised by Indeck against Keck constituted notice to a prior insurer of defendant.  

We find defendant's argument lacks merit.  Defendant is attempting to distinguish and distance himself from "the firm," but this is impossible.  At the very heart of the arbitration between Indeck and Polsky, and the subsequent litigation between Indeck and defendant and Keck, lies the employment agreement and the shareholders' agreement that defendant drafted while at Arnstein & Lehr.  We have already determined that ALAS is a "prior insurer" of defendant.  Thus, the issue becomes:  who is the "insured," and at what point did the "insured" give notice to ALAS?  

We find that defendant is an "insured" under plaintiff's policy definition of "the Insured."  Defendant is an "Insured" under subsection (c) as a "former partner *** of the firm named in the Declarations," 
i.e.
, Arnstein & Lehr, but only "while acting solely in a professional capacity on behalf of such firms."  Arnstein & Lehr is separately defined as an "Insured" under subsection (a) as the "Named Insured firm *** in the Declarations."  We also agree with the trial court's finding that the April 28, 1992, letter to ALAS constituted defendant's notice to a prior insurer.  We agree with defendant that the April 28, 1992, letter refers to "the firm" and not defendant specifically by name.  However, in reading the letter, logic dictates that "the firm" means not only Keck but also "[members of] the firm."  To read the letter in any other fashion would be absurd.  For example, one sentence of the letter reads, "At a meeting between the principal officers of Indeck and the firm ***, the Indeck officers presented a list of *** matters which they asserted had been improperly handled by the firm."  "Firm" is defined as a "business entity or enterprise."  Black's Law Dictionary 634 (6th ed. 1990).  One example of an entity is a partnership, that includes professional corporations, such as Keck.  A "corporation" is defined as "[a]n artificial person or legal entity created by or under the authority of the laws of a state."  Black's Law Dictionary 340 (6th ed. 1990); see generally 805 ILCS 5/1.01 
et seq.
 (West 1994).  A "partnership" is a "business that is owned by two or more persons that is not organized as a corporation."  Black's Law Dictionary 1120 (6th ed. 1990); see also 805 ILCS 205/6 (West 1996).  

Clearly, a literal interpretation of the foregoing sentence from the April 28, 1992, letter would be inane.  A "firm" does not walk into a building and attend a meeting with corporate officers--human beings, or members of a firm, partnership, or corporation, do.  Defendant admitted in his May 17, 1996, affidavit that he attended the April 8, 1992, meeting with the principal officers of Indeck where the Indeck officers presented a list of matters which they asserted had been improperly handled by "[him] and other Keck attorneys."  Without further belaboring our exercise in semantics, we agree with the trial court and find that the April 28, 1992, letter to ALAS constituted notice to a prior insurer of defendant and that defendant, through that letter, gave notice to a prior insurer of defendant. 

Defendant's final issue on appeal is whether clause (bb)(2) bars coverage to defendant.  Clause (bb)(2) requires that defendant "did not have a basis to believe that [defendant's] act, error or omission *** was a breach of professional duty or may result in a claim."  Defendant contends that a subjective standard should be applied to determine whether defendant had a basis to believe that his prior acts may result in a claim.  He cites to 
Gibraltar Casualty Co. v. A. Epstein & Sons, International, Inc.
, 206 Ill. App. 3d 272 (1990), and 
Estate of Logan v. Northwestern National Casualty Co.
, 424 N.W.2d 179 (Wis. 1988), in support of his argument.  Defendant states in his May 31, 1996, affidavit, 
inter alia
:

"2.  After the November 1991 arbitration award, Indeck fired [Keck] and me and obtained other counsel ***.  ***

3.  On April 8, 1992, *** Indeck presented us with a list of specific alleged negligent acts, errors and omissions that 
Indeck believed
 [Keck] attorneys had committed ***.

4.  The list contained a section entitled 'Polsky Arbitration[,'] but it did not refer to any *** negligent acts, errors or omissions concerning my drafting work at Arnstein that were later asserted in an October 14, 1994 complaint filed by Indeck.

5.  In November 1993, [Keck], Adelman and I signed an agreement tolling the statute of limitations.  Neither the tolling agreement nor the discussions relating to it disclosed to me that 
Indeck believed
 I had committed any of the alleged negligent acts, errors or omissions concerning my drafting work ***.

6.  
The first time I was made aware that Indeck believed
 I had committed any of the alleged negligent acts, errors or omissions concerning my drafting work at Arnstein was when I read the October 14, 1994 Indeck Complaint shortly after it was filed.

7.  The only time prior to reading the *** complaint that I was apprised of any concerns regarding my drafting work at Arnstein was the listing in the April 8, 1992 memorandum of a concern regarding the lack of a minority discount provision in the shareholders agreement ***.  *** I thought nothing of this item because I had discussed having a minority discount provision in the shareholders agreement with *** the majority shareholder of Indeck.  *** [T]he parties agreed not to have a minority discount provision."  (Emphasis added.)

Where a party moving for summary judgment files supporting affidavits containing well-pleaded facts and the party opposing the motion files no counteraffidavits, the material facts set forth in the moving party's affidavits stand as admitted.  
Diversified Realty Group, Inc. v. Davis
, 257 Ill. App. 3d 417, 420 (1993).  In the present case, plaintiffs failed to file counteraffidavits in opposition.  Therefore, defendant's affidavits of May 17 and May 31, 1996, are taken as true.  See 
Soderlund Brothers, Inc. v. Carrier Corp.
, 278 Ill. App. 3d 606, 614 (1996).  Defendant's affidavit dated May 17, 1996, states that at the April 8, 1992, meeting, the attorney for Indeck presented defendant "with a[n] *** outline setting forth a number of purported instances of malpractice supposedly committed by 
me
 and other Keck attorneys, and *** damages *** ranging from $13 million to $29 million."

We note that the mere existence of factual questions that are unrelated to the essential elements of the cause of action will not preclude a court from granting summary judgment.  
Staley Continental, Inc. v. Venterra Sales & Management Co.
, 228 Ill. App. 3d 174, 179 (1992), citing 
Village of Beckmeyer v. Wheelan
, 212 Ill. App. 3d 287, 294 (1991).  Accordingly, facts and circumstances surrounding why defendant failed to include a minority shareholder provision in the shareholders' agreement are of no consequence to the determination of any matter in dispute in this case. 

The relevant inquiry is not whether defendant had a basis to believe that Indeck believed defendant had committed any act, error, or omission that may have resulted in a claim, but rather whether defendant, himself, had a basis to believe that his alleged drafting errors may result in a claim.  Therefore, we return to the issue on appeal:  whether this court should apply a subjective or objective standard to determine whether defendant had a basis to believe that his alleged errors may result in a claim.  

We believe that the logic and reasoning of 
Ratcliffe v. International Surplus Lines Insurance Co.
, 194 Ill. App. 3d 18 (1990), is persuasive.  In 
Ratcliffe
, the plaintiffs brought an action seeking a declaration of the scopes of coverage under two claims-made professional liability policies underwritten by International Surplus Lines Insurance Company.  The trial court determined that plaintiffs had made a material misrepresentation because they had not disclosed a dispute with a construction company in their application.  On appeal, the plaintiffs argued that the trial court erroneously applied an objective standard in determining whether a misrepresentation occurred.  The plaintiffs contended that they honestly and subjectively believed that no circumstances existed at the time of application which might have given rise to a claim.  The reviewing court in 
Ratcliffe
 relied upon 
Evanston Insurance Co. v. Security Assurance Co.
 (
Evanston
), 715 F. Supp. 1405 (N.D. Ill. 1989), and considered the facts known to the plaintiffs at the time of the policy application.  By applying an objective standard, the 
Ratcliffe
 court determined  that the facts known to the plaintiffs were circumstances which might have given rise to a claim against them and affirmed the trial court on the issue of material misrepresentation.  
Ratcliffe
, 194 Ill. App. 3d at 27.

In the present case, both the trial court and plaintiffs rely on 
Evanston
 for the proposition that an objective standard should apply in determining whether defendant had a basis to believe that his alleged drafting errors may result in a claim.  In 
Evanston
, the court considered an errors and omissions policy application question asking whether the applicant knew of "[any] fact, circumstance or situation indicating the probability of a claim against which indemnification is or would be afforded by the proposed insurance."  
Evanston
, 715 F. Supp. at 1413.  The 
Evanston
 court concluded that the question "calls for no judgmental or subjective evaluation, but in traditional objective language requires the disclosure of any facts indicating the probability of a covered claim."  
Evanston
, 715 F. Supp. at 1414.  We agree with the reasoning and result in 
Evanston
.  Although 
Ratcliffe
 involves issues of misrepresentations contained in an application for insurance coverage, we believe that the rationale found in both 
Evanston
 and 
Ratcliffe
 leads us to determine that an objective standard should apply.  

Applying an objective standard in the present case, we note defendant's cognizance of the following facts:  that Indeck was defendant's client; that defendant drafted the employment agreement and the shareholders' agreement; that at the heart of the Polsky arbitration were disputes between Polsky and Indeck concerning provisions of the employment agreement and shareholders' agreement; that in November 1991 the arbitrator construed the agreements and issued a multimillion dollar award against Indeck; that, subsequent to the arbitration, Indeck fired defendant and refused to pay Keck's outstanding invoices; that on April 8, 1992, Indeck presented defendant with a list of "purported instances of malpractice supposedly committed by [him]"; that on April 28, 1992, Keck sent ALAS a letter, notifying ALAS of circumstances that might give rise to a claim against the firm by Indeck; and that in November 1993 defendant signed an agreement tolling the statute of limitations with Indeck, "individually and as present or former partner of the law firm [Keck]."  Under an objective standard, we hold that the above facts gave defendant a "basis to believe" that defendant's acts, errors, or omissions may result in a claim.  Therefore, the trial court was correct in determining that clause (bb)(2) bars coverage for defendant.  

We conclude that defendant failed to satisfy clause (bb) in the conjunctive, rendering him excluded from coverage under plaintiffs' insurance policy.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and THOMAS, JJ., concur.