BASHAR ZUBI, Plaintiff-Appellant, v. ACCEPTANCE INDEMNITY INSURANCE COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—00—2581

Opinion filed May 21, 2001.

Eugene K. Hollander, of Law Offices of Eugene K. Hollander, of Chicago, for appellant.

Gerry M. Rinden, of Wintroub, Rinden, Sens & McCreary, of Des Moines, Iowa, for appellees.

JUSTICE COHEN delivered the opinion of the court:

Appellant Bashar Zubi owned a grocery store known as American Food & Liquor, located at 1511-1515 West Roosevelt Road in Chicago. In December 1993, Zubi placed an application for insurance on the store premises with an insurance broker, Intermodal Insurance Agency. Intermodal placed Zubi's application with appellee Hull & Company (Midwest), Inc., for purposes of contracting with an insur-

ance carrier. Hull was the managing general agent for appellee Acceptance Indemnity Insurance Company, an insurance carrier located in Nebraska, and had full authority to bind coverage and cancel policies on Acceptance's behalf. In December 1993, John Szczesny, an account executive at Hull, secured a policy of insurance on Zubi's behalf through Acceptance. In December 1994, Zubi renewed his policy with Acceptance through its agent, Hull. During the renewal period (in December 1994 and July 1995, respectively), Zubi's property sustained two minor arson fires. Acceptance paid both of these losses. Following notification of the July 1995 fire to Acceptance, Paula Flemming-Irons, an underwriter for Acceptance, contacted Szczesny and advised him to cancel Zubi's policy. On July 17, 1995, Acceptance, through Szczesny at Hull, mailed to Zubi a notice of Acceptance's election to cancel the policy. The notice of cancellation stated an effective cancellation date of August 19, 1995, at 12:01 a.m. The notice was sent to Zubi at his last known mailing address of 1000 South Loomis, Chicago, Illinois, 60609, the address reflected on the relevant policy declarations. Acceptance obtained a receipt of mailing from the United States Postal Service. Acceptance also returned the remaining amount of his premium to Zubi. On September 5, 1995, Zubi's store premises suffered a fire loss in excess of the $225,000 policy limit. Acceptance denied coverage for the September 5 loss predicated on the August 19 policy cancellation.

Zubi filed a four-count complaint in the circuit court of Cook County against Acceptance, Hull and Intermodal. Count I alleged breach of contract against Acceptance for failure to pay Zubi's claim. Count II alleged unreasonable and vexatious delay in settling Zubi's claim against Acceptance under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1998)). Count III alleged negligent misrepresentation against Intermodal.[1] Count IV alleged negligent misrepresentation against Hull.

Zubi moved for summary judgment against Acceptance on count I. Acceptance filed its response to Zubi's summary judgment motion and a cross-motion for summary judgment on count I, asserting as an affirmative defense that the contract had already been canceled at the time Zubi sought payment of his claim. The trial court denied Zubi's motion and entered summary judgment in favor of Acceptance on count I.

Zubi then moved for leave to amend his complaint by adding a proposed count V. Count V further alleged breach of contract against

---

[1] A jury verdict in favor of Intermodal was rendered on June 29, 2000. Intermodal is not a party to this appeal.

Acceptance in the *manner and method* by which his policy was canceled as opposed to alleging the lack of a contractual basis for cancellation as alleged in count I. Following briefing and argument, the court denied Zubi's motion to amend. Zubi then filed a second motion, seeking leave to file an amended count V, which the court subsequently denied. Acceptance then moved for summary judgment on count II of the complaint, which was granted. Hull moved for summary judgment on count IV, which was also granted.

On appeal, Zubi argues that the trial court erred: (1) in granting summary judgment to Acceptance on counts I and II of the complaint; (2) in granting summary judgment to Hull on count IV of the complaint; and (3) in denying Zubi leave to file an amended count V. We affirm.

## 1. Summary Judgment

●1 "Where the matter or issue may be decided as a question of law, such as where the only issue concerns the construction of an insurance policy, including its exclusionary provisions, summary judgment is a proper remedy." *University of Illinois v. Continental Casualty Co.*, 234 Ill. App. 3d 340, 343 (1992). Our review of an order granting summary judgment is *de novo. North American Insurance Co. v. Kemper National Insurance Co.*, 325 Ill. App. 3d 477, 481-82 (2001). "Summary judgment is proper 'where the pleadings, affidavits, depositions, admissions and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.' " *Natale v. Gottlieb Memorial Hospital*, 314 Ill. App. 3d 885, 888 (2000), quoting *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996). The function of a reviewing court on appeal from a grant of summary judgment is limited to determining whether the trial court correctly concluded that no genuine issue of material fact was raised and, if none was raised, whether judgment as a matter of law was correctly entered. *Malanowski v. Jabamoni*, 293 Ill. App. 3d 720, 724 (1997). "A court of review's determination as to whether the record supports a grant of summary judgment is one of law *** and may be based on any grounds called for by the record." *In re Marriage of Palacios*, 275 Ill. App. 3d 561, 568 (1995). "Summary judgment is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is free from doubt." *North American Insurance Co.*, 325 Ill. App. 3d at 482. "Reversal of [an order granting] summary judgment is warranted where, on review, a material issue of fact or an inaccurate interpretation of the law exists." *North American Insurance Co.*, 325 Ill. App. 3d at 482.

## A. Counts I and II

•2, 3 "When a contract is the subject of a summary judgment motion, 'the appropriateness of summary judgment will turn on the clarity of the contract terms under scrutiny.' " *Old Republic Insurance Co. v. Federal Crop Insurance Co.*, 947 F.2d 269, 274 (7th Cir. 1991), quoting *International Surplus Lines Insurance Co. v. Fireman's Fund Insurance Co.*, No. 88—C320 (N.D. Ill. May 4, 1991). Before addressing the contract terms at issue, we first consider general principles involved in the construction of contracts of insurance:

"An agreement reduced to writing must be presumed to reflect the intention of the parties who signed it. [Citations.] To ascertain the meaning of [a] policy's words and the intent of the parties, the court must construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the contract in its entirety. [Citations.] Illinois law governing the construction of insurance contracts dictates that, if a policy term is subject to more than one reasonable interpretation, any ambiguity must be construed in favor of the policyholder. [Citation.] Where the terms of an agreement are plain and unambiguous, a court must afford them their *plain, ordinary and popular meaning.* [Citations.] In addition, the absence of a definition does not render a policy term ambiguous, nor is it ambiguous simply because the parties can suggest creative possibilities for its meaning. [Citations.] The alternate interpretation must also be reasonable. [Citation.] Although ambiguities in an insurance policy will be construed against the insurer, courts will not distort the language of a policy to create an ambiguity where none exists. [Citation.] Whether an ambiguity exists is a question of law for the trial court to determine." (Emphasis in original.) *Smith v. Neumann*, 289 Ill. App. 3d 1056, 1064 (1997).

See *Board of Education of Maine Township High School District 207 v. International Insurance Co.*, 292 Ill. App. 3d 14, 17 (1997); *International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co.*, 209 Ill. App. 3d 144, 148 (1990).

Count I of Zubi's complaint alleged breach of contract against Acceptance for failure to pay Zubi's claim.[2] Acceptance asserted as an affirmative defense that the contract had already been canceled prior to the occurrence of the fire damage for which Zubi sought payment. In ruling on Zubi's and Acceptance's cross-motions for summary judgment on count I, the trial court stated in its order:

"Counsel *** agree[ ] that they have pointed the court to no deci-

---

[2]It was undisputed at trial that fire was a covered cause of loss under the subject insurance policy.

sion directly on point and what is here called for is a determination as a matter of law as to the terms of the subject contract. The court finds that there is no ambiguity in the contract terms and that any ambiguity about possible surplusages [*sic*] in the written notice of cancellation does not affect the substantive right of the defendant, Acceptance \*\*\*, to cancel the surplus lines insurance policy as here that policy was cancelled. In short, on this record there are no genuine issues of material fact in dispute and plaintiff is not, and defendant, Acceptance \*\*\*, is entitled to the judgment sought as a matter of law."

Thus, the trial court found as a matter of law that Acceptance's cancellation of Zubi's coverage was proper under the terms of the contract.

The question before the trial court in construing the terms of the policy (which is now before us *de novo*) was whether Acceptance had a contractual right to cancel Zubi's coverage. The contract provisions at issue in this case are as follows:

"COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. CANCELLATION.**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice."

The policy also contains an amendatory endorsement, which reads as follows:

"THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

## CANCELLATION CHANGES

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

The following is added to the CANCELLATION Common Policy Condition:

If any one of the following conditions exists at any building that is Covered Property in this policy, we may cancel this Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least five days before the effective date of cancellation.

**A.** The building has been vacant of [*sic*] unoccupied 60 or more consecutive days. This does not apply to:

**1.** Seasonal unoccupancy;

**2.** Buildings in the course of construction, renovation or addition, or

**3.** Buildings to which the Vacancy Permit endorsement applies.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**B.** After damage by a covered cause of loss, permanent repairs to the building;

**1.** Have not started, and

**2.** Have not been contracted for, within 30 days of initial payment of loss.

**C.** The building has:

**1.** An outstanding order to vacate;

**2.** An outstanding demolition order;

**3.** Been declared unsafe by governmental authority.

**D.** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**E.** Failure to:

**1.** Furnish necessary heat, water, sewer service or electricity for thirty consecutive days or more, except during a period of seasonal unoccupancy;

or

**2.** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes."

Acceptance urges us to adopt the trial court's interpretation of these provisions, *i.e.*, that Acceptance had the right to cancel Zubi's

coverage upon either 5 or 10 days' notice, if the contract was cancelled for one of the reasons set forth in the policy, or upon 30 days' notice if the contract was cancelled for "any other reason." Pointing to the notice of cancellation received from Hull, Zubi argues that "IN-CREASE IN HAZARD" was not a valid reason for cancellation of the policy and that the trial court erred in granting summary judgment on that basis.

•4 We begin with the plain language of the policy itself. We must give the words of the policy their "plain, ordinary and popular meaning." *Smith v. Neumann*, 289 Ill. App. 3d 1056, 1064 (1997). *Only* if we find an ambiguity in the language of the policy may we fall back upon the rule of construction requiring the interpretation of such an ambiguity in favor of the insured. *Smith*, 289 Ill. App. 3d at 1064. After a careful review of the entire policy, we find ourselves in agreement with the trial court. There is no ambiguity in the cancellation provisions of the policy. The plain language of those provisions—"We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least \*\*\*"—grants Acceptance the right to cancel upon proper notice to Zubi. Any cancellation by Acceptance is subject to certain time-based limitations: written notice must be provided to the insured 5 days before the effective date of cancellation if coverage is cancelled for any of the reasons set forth in the amendatory endorsement, 10 days before the effective date of cancellation if coverage is cancelled for nonpayment of premium, and 30 days before the effective date of cancellation if coverage is cancelled for "any other reason." Zubi urges us to take the position that the phrase "any other reason" limits Acceptance's right to cancel to those reasons set forth in the policy, *i.e.*, either nonpayment of premium or one of the several reasons stated in the amendatory endorsement. However, such limiting language (although it might easily have been added) is simply not present. Indeed, such a limitation would render the 30-day notice provision superfluous, as the reasons set forth in the policy and the amendatory endorsement are already subject to 5- and 10-day notice requirements, respectively. The phrase "*any* other reason" (emphasis added) means exactly that—a reason "that is selected without restriction or limitation of choice" (Webster's Third New International Dictionary 97 (1986))—and refers to the applicable time frame for notice of cancellation if Acceptance cancels the policy for a reason other than those to which the policy specifies that a 5- or 10-day period of notice applies.

We further agree with the trial court with respect to the "IN-CREASE IN HAZARD" notation in the notice of cancellation. In light of our reading of the policy terms, the reason for cancellation stated in

the notice was surplusage and did not affect the substantive right of Acceptance to cancel the policy.

Acknowledging the distress our reading of the policy most probably bestows upon the appellant, once again this court reiterates its never-changing mandate—follow the law. The plain language of the policy is unambiguous, and we may " 'neither distort the meaning of words so as to reach a desired result, nor search for or invent ambiguities where none exist.' " *University of Illinois v. Continental Casualty Co.*, 234 Ill. App. 3d 340, 350 (1992), quoting *International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co.*, 209 Ill. App. 3d 144, 148-50 (1990). "[A] court cannot read an ambiguity into a policy just to find in favor of the insured." *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 530 (1995). "A policy term is not ambiguous [merely] because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning." *Lapham-Hickey Steel Corp.*, 166 Ill. 2d at 529.

●5 Our reading of the policy also takes into account "the risk undertaken, the subject matter that is insured, and the purposes of the contract in its entirety." *Smith v. Neumann*, 289 Ill. App. 3d 1056, 1064 (1997). Surplus lines coverage is only available to a proposed insured in Illinois if "the insurance producer representing the [proposed] insured [(in this case, Intermodal)] *** is unable, after diligent effort, to procure said insurance from companies which are authorized to transact business in this State." 215 ILCS 5/445(1) (West 1998). Zubi was forced to turn for coverage to an out-of-state surplus lines carrier because no authorized Illinois carrier was willing to insure such a high-risk business. Although we recognize that insurance contracts are typically contracts of adhesion (*Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 533 (1996) (Freeman, J., specially concurring):

> "The mere fact that one party to a contract enjoyed little relative bargaining strength *** cannot alone render a contractual provision unenforceable. [Citation.] Neither will the mere fact that a questioned clause is contained in a form agreement support a finding of unconscionability. [Citation.] An unconscionable bargain is one which no reasonable person would make and which no honest person would accept. [Citations.] The term 'unconscionable' encompasses the absence of meaningful choice by one of the parties as well as contract terms which are unreasonably favorable to the other party." *Larned v. First Chicago Corp.*, 264 Ill. App. 3d 697, 700 (1994).

Although the cancellation provision of the policy was certainly more

favorable to Acceptance, as the party bearing the risk, we cannot say, based on the level of risk inherent in Zubi's business and its attendant low degree of insurability, that this was a bargain that "no reasonable person would make and which no honest person would accept." *Larned*, 264 Ill. App. 3d at 700.

●6 Because we agree with the trial court that Zubi failed to establish a genuine issue of material fact at trial with respect to count I, we turn to the question of whether summary judgment was properly granted as a matter of law. *Natale v. Gottlieb Memorial Hospital*, 314 Ill. App. 3d 885, 888 (2000). The notice of cancellation was mailed on July 17, 1995, stating an effective date of cancellation of August 19, 1995 at 12:01 a.m. Thus, the notice was mailed more than "thirty days before the effective date of cancellation," as required under the terms of the policy. Despite the error in the zip code listed on the policy declarations (the correct code for the 1000 S. Loomis address should have been 60607 rather than 60609), the notice was sent to the "last mailing address known to [Acceptance]," as reflected in the policy declarations. Zubi did not contest that the notice of cancellation had been mailed. Indeed, Zubi admitted during his deposition that he had received and reviewed the policy declarations. The cancellation provision of the policy states that "[i]f notice is mailed, proof of mailing will be sufficient proof of notice." The record contains a certificate of proof of mailing from the United States Postal Service, signed by the receiving employee. Thus, Acceptance fulfilled all of its obligations under the policy with respect to cancellation. The policy had been properly cancelled as of August 19, 1995, and was no longer in force at the time of the September 5, 1995, fire for which Zubi was denied coverage. Therefore, Acceptance could not have been in breach of the policy at that time. Acceptance was entitled to summary judgment as to count I, and the judgment of the trial court in that regard is affirmed.

Similarly, an action for unreasonable and vexatious delay in settling a claim cannot lie where, as we have determined, there is no policy of insurance in effect upon which such a claim may be predicated. 215 ILCS 5/155(1) (West 1998). The trial court's grant of summary judgment in favor of Acceptance on count II is affirmed.

## B. Count IV

●7, 8 Zubi further claims that the trial court erred in granting summary judgment to Hull on count IV of the complaint. Count IV alleged negligent misrepresentation against Hull for failing to:

"A. Disclose to [Zubi] that Acceptance Indemnity intended to cancel his policy for an increase in hazard;

 B. Advise [Zubi] that he should seek alternative insurance coverage;

 C. Verify [Zubi's] mailing address for purposes of notice;

 D. Communicate to Acceptance Indemnity that [Zubi's] mailing address had changed;

 E. Otherwise apprise Acceptance Indemnity regarding material matters pertinent to [Zubi's] insurance policy."

"An action for the tort of negligent misrepresentation may be maintained if the complaint alleges that the defendant is in the business of supplying information for the guidance of others in their business transactions and, therefore, owes a duty to plaintiff, a breach of that duty, and injury proximately caused by the breach." *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 233 (1991). There was no dispute in the trial court over Hull's status with respect to Acceptance: Hull was Acceptance's managing general agent, with authority to bind and cancel policies on Acceptance's behalf. "In its capacity as [Acceptance's] agent, [Hull] was acting on behalf of [Acceptance] and under [Acceptance's] authority." *Lang*, 222 Ill. App. 3d at 234. "[N]egligent misrepresentation actions are almost universally limited to situations involving one who, in the course of his business or profession, supplies information for the guidance of others in their business relations with *third parties*." (Emphasis added.) *Lang*, 222 Ill. App. 3d at 235. However, Hull had its own pecuniary interest in Zubi's purchase of insurance from Acceptance. As Acceptance's agent, Hull received a commission from Acceptance on the sale of the policy. Zubi also financed the payment of his premium through Hull. "Any information that was given to [Zubi] by [Hull] was not supplied to [Zubi] to aid him in his business with others, but was merely incidental to [Zubi's] insurance transaction with [Hull] and its principal, [Acceptance]." *Lang*, 222 Ill. App. 3d at 236. Therefore, under these facts, we do not reach the question of whether Hull had a duty to independently verify the zip code recorded in the policy declarations, as used on the notice of cancellation—no cause of action for negligent misrepresentation may lie unless information is supplied "for the guidance of others in their business relations with third parties." *Lang*, 222 Ill. App. 3d at 235. We affirm the trial court's determinations that no genuine issue of material fact was raised with respect to count IV, and that Hull was entitled to summary judgment as a matter of law.

## 2. Motions to Amend

 Zubi's final argument on appeal is that the trial court erred in denying both his motion to amend his complaint by adding a proposed count V as well as his subsequent motion to add an amended count V. The first proposed count V alleged that Acceptance breached its

contract with Zubi in the manner and method of its cancellation of the contract in that Acceptance had addressed the notice of cancellation with the wrong zip code. The proposed amended count V was different from the version previously rejected by the trial court in that it cited a specific section of the policy that Zubi claimed Acceptance had violated.

●9 Amendments to a complaint are permissible at any time prior to final judgment (735 ILCS 5/2—616(a) (West 1998)), even after an award of summary judgment (735 ILCS 5/2—1005(g) (West 1998)). "However, parties do not have an absolute right to amend their pleadings. [Citation.] Rather, the determination of whether pleadings may be amended is committed to the sound discretion of the trial court." *Kennedy v. King*, 252 Ill. App. 3d 52, 55 (1993). The decision of the trial court will not be disturbed on review absent an abuse of discretion. *People ex rel. Ulrich v. Bossmann*, 279 Ill. App. 3d 36, 46 (1996).

●10 "[T]he factors which are to be considered in reviewing the propriety of the denial of a motion to amend the pleadings include (1) whether the proposed amendment would cure the defective pleading; (2) whether the proposed amendment would cause prejudice or surprise to the defendant; (3) the timeliness of the proposed amendment; and (4) whether previous opportunities to amend the pleadings could be identified. [Citation.] The first factor is an important one and may be determinative of the question on review, where, as a matter of law, the proposed amended complaint would be subject to immediate dismissal, due to some inherent defect." *Kennedy*, 252 Ill. App. 3d at 55.

In its order dismissing Zubi's original proposed count V, the trial court stated that "count 5 as cast does not state a cause of action." The record indicates that the trial court found the original proposed count V insufficient on the grounds that it failed to cite a specific provision of the policy upon which a breach might be predicated. Zubi then amended the proposed count V to allege that Acceptance had breached sections A.2.b and A.3 of the "Common Policy Conditions" by mailing the notice of cancellation to the wrong address (*i.e.*, by addressing the notice with a "60609" zip code rather than the correct "60607" code).

●11 In its order denying Zubi's motion to file an amended count V, the trial court stated that "[Zubi's] averments, viewed in the light most favorable to [Zubi] and taken as true, fail to aver facts sufficient to state a claim for breach of contract." Section A.3 required Acceptance to "mail or deliver [its] notice [of cancellation] to the first Named Insured's last mailing address *known to* [*it*]." (Emphasis added.) The "60609" zip code was appended to Zubi's last known mailing address, as listed in the relevant policy declarations. Zubi admitted in his depo-

sition to having received a copy of those declarations. There is nothing in the record to indicate that Zubi ever attempted to inform Acceptance or its agent, Hull, of any change of address prior to the mailing of the notice of cancellation. Therefore, Acceptance did mail the notice of cancellation to the last mailing address *"known to [it]*," as required under section A.3 of the "Common Policy Conditions." (Emphasis added.) Under these circumstances, the trial court correctly determined that the averments in the proposed amended count V "failed to state a claim for breach of contract." After a careful review of the record, we conclude that the trial court acted well within its discretion in denying both Zubi's motion to add a proposed count V, as well as his motion to add a proposed amended count V, and its rulings are affirmed. *Kennedy*, 252 Ill. App. 3d at 55.

For the foregoing reasons, we affirm the judgment of the trial court: (1) in granting summary judgment in favor of Acceptance on counts I and II; (2) in granting summary judgment to Hull on count IV; and (3) in denying Zubi's motions to amend his complaint by adding a proposed and amended count V.

Affirmed.

O'MARA FROSSARD and TULLY, JJ., concur.