2021 IL App (1st) 201157-U

SECOND DIVISION
September 14, 2021

No. 1-20-1157

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CHICAGO AMBULATORY SURGERY ASSOCIATES, INC., CHICAGO PAIN AND ORTHOPEDIC INSTITUTE, LLC, ACCREDITED AMBULATORY CARE, LLC, RAPID REHAB OF ILLINOIS, LTD., FOOT AND ANKLE TREATMENT CENTER OF CHICAGO, LLC, IMH MEDICAL BILLING SERVICES, INC., and BREACHED, LLC, | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| RESTORE CONSTRUCTION, INC., PATRICK L. SANTORO SR., and MICHAEL P. SANTORO, | ) ) ) | No. 16 L 7611 |
| Defendants. | ) ) | |
| _____ | ) ) | |
| RESTORE CONSTRUCTION, INC., | ) ) | |
| Third-Party Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| (Super T Plumbing and General Contracting, Inc., George Tompoe, Gary L. Matthews, GMP Development, LLC, Steven Searles, | ) ) ) ) | Honorable Daniel J. Kubasiak, Judge Presiding. |

Third-Party Defendants.)    )

    )

ONYX ARCHITECTURAL SERVICES, INC,    )

    )

Third-Party Defendant-Appellee.    )

---

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1    *Held*: The circuit court did not err when it entered summary judgment in favor of a third-party defendant in a contribution action. The record demonstrates that the third-party defendant, an architectural firm, did not have a duty to inspect the plumbing installation that is the basis of the third-party plaintiff's contribution claim.

¶ 2    Third-Party Plaintiff Restore Construction, Inc. retained third-party defendant Onyx Architectural Services, Inc. to provide architectural services for a construction project in Chicago. During construction, the plumbing contractors deviated from the plans. After the project was completed, the improper plumbing work caused water and sewage to flood the building on dozens of occasions.

¶ 3    The building owners sued Restore Construction, and Restore Construction filed a third-party complaint against Onyx Architectural, among other parties. Restore Construction alleges that Onyx Architectural is liable for failing to inspect the plumbing work and ensure that the plumbing work was done properly and done in accordance with the architectural plans. The trial court found that Onyx Architectural did not have the legal duties that underlie Restore Construction's contribution claim. We affirm.

¶ 4                    BACKGROUND

¶ 5    The plaintiffs in the first-party action in this case hired defendant Restore Construction, Inc. to build out medical office space at 1212 N. LaSalle Street in Chicago. In turn, Restore

Construction retained the services of several contractors to perform the varying tasks associated with the construction project.

¶ 6     After construction was completed, flooding events began to occur at the property. The plaintiffs allege that, on no less than 61 occasions, sudden floods caused water and sewage to back up into the building and begin overflowing into various rooms. The plaintiffs allege that the water and sewage sometimes accumulated to as much as six inches deep. Water damage occurred throughout the building and the property damage and the improper plumbing work had to be fixed at significant cost to plaintiffs. Plaintiffs also allege that they lost significant business revenue by having to cancel surgeries that they were scheduled to perform. The flooding was primarily the result of the plumbers tying into the wrong line, meaning that the plumbers deviated from the plans and improperly connected the sanitary sewer line to the storm water piping.

¶ 7     Plaintiffs filed this case against Restore Construction and its principals for the damages resulting from the allegedly improper construction. After being sued, Restore Construction filed a third-party action against the contractors it hired to perform certain work. Relevant here is Restore Construction's third-party claim against Onyx Architectural Services. Restore Construction retained Onyx Architectural to provide architectural services for the project, including the preparation of architectural plans and specifications for the project. The relationship between Restore Construction and Onyx Architectural is governed by a contract.

¶ 8     The contract between Restore Construction and Onyx Architectural provides that Onyx Architectural would provide its services during five stages of construction: (1) the schematic design phase; (2) the design development phase; (3) the construction document phase; (4) the bidding phase; and (5) the construction observation phase. Most relevant here is the

"construction observation phase." Restore Construction contends that Onyx Architectural is liable in contribution because it failed to make reasonable inspections of the plumbing services, failed to ensure that the proper piping connections existed, and generally failed to properly perform architectural services relating to the piping connections. Restore Construction maintains that Onyx Architectural had a duty during the construction observation phase of the project to ensure that the construction taking place at the site complied with the architectural drawings it prepared. Onyx Architectural moved for summary judgment arguing that it had no duty to perform the services that Restore Construction alleges it was negligent in performing.

¶ 9      The contract between Restore Construction and Onyx Architectural stipulates that Onyx was required to make a minimum of one site visit per week throughout the construction schedule. Onyx was further required under the contract to attend weekly meetings to discuss project progress and adherence to the drawings and the construction schedule. Although the contract between Restore Construction and Onyx Architectural does not mention any obligation to "inspect," Restore Construction maintains that Onyx had a duty to inspect and ensure compliance with its drawings.

¶ 10     Pointing to the deposition testimony of Stephen Searles, the project manager Restore Construction hired for the project, Restore Construction contends that the parties understood that Onyx would inspect all work, or that Onyx would at least observe the work and ensure it complied with the architectural drawings. Searles testified that, typically, architects inspect all work. Searles further testified that architects look to see if the work is complete, but that architects depend on the city inspectors, such as the plumbing inspector, to perform the deep dives on particular building disciplines.

¶ 11     In contrast to the deposition testimony that Restore Construction relies upon, Onyx Architectural points to portions of Searles's deposition in which he testified that he did not hire Onyx Architectural to inspect the work, including the plumbing work. He testified that all the services Onyx was required to perform were memorialized in the contract. The contract did not give Onyx Architectural the authority to define the means and methods of the work.

¶ 12     In the first party action, the plaintiffs did not allege that Onyx Architectural was negligent in any way. The plaintiffs did not allege that there was any negligence or anything improper about the plans drawn up by Onyx Architectural. Instead, the plaintiffs allege that Restore Construction and certain of its contractors were negligent for failing to follow the plans. Restore Construction, however, contends that Onyx had a duty under the contract that could lead to its liability for the improper plumbing work that caused the plaintiffs' damages.

¶ 13     Onyx Architectural moved for summary judgment on the third-party contribution claim. The trial court granted the summary judgment motion in part and denied it in part. The trial court granted Onyx Architectural's motion for summary judgment as it related to subparagraphs (a) and (b) of Restore Construction's third-party claim and denied summary judgment as to subparagraphs (c) and (d). Subparagraphs (a) and (b) contain Restore Construction's contentions that Onyx was negligent by generally failing to properly perform architectural services for the project and for failing to properly perform architectural services as related to the connection of the sanitary and storm sewer piping. Subparagraphs (c) and (d) contain Restore Construction's contentions that Onyx was negligent for failing to make reasonable inspections of the plumbing services to ensure the proper piping connections existed and for failing to use ordinary care when performing the architectural services for the project.

¶ 14    Onyx Architectural filed a motion to reconsider the portion of the trial court's ruling that denied in part the motion for summary judgment. On reconsideration, the trial court held that Onyx Architectural did not have the duties that Restore Construction claimed created a basis for liability. Accordingly, the court found that Onyx Architectural was entitled to summary judgment on the entirety of the contribution claim. Restore Construction filed a motion to reconsider the judgment of no liability entered in Onyx's favor. The trial court denied the motion to reconsider. Restore Construction now appeals under the trial court's Rule 304(a) finding in which the trial court ruled that there was no just reason for delaying the enforcement or appeal of its order.

¶ 15                                    ANALYSIS

¶ 16    Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish a genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2–1005 (West 2018); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. Summary judgment promotes the efficient and economical use of the judicial system. *Kahn v. First National Bank of Chicago*, 216 Ill. App. 3d 272, 275 (1991). When only questions of law are involved, such as when the issue in dispute concerns the interpretation of a contract, summary judgment is a proper mechanism for resolving the legal question. *Zubi v. Acceptance Indemnity Insurance Co.*, 323 Ill. App. 3d 28, 32 (2001); *Marshall By Marshall v. City of Centralia*, 143 Ill. 2d 1, 6 (1991). We review a trial court's ruling on a motion for summary judgment *de novo. Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.,* 2015 IL App (1st) 132350, ¶ 8.

¶ 17    Whether a duty exists for purposes of a negligence claim is a question of law that is decided by the court. *Marshall*, 143 Ill. 2d at 6. In the context of construction cases where

contractors are involved, the existence of a duty in negligence is often controlled by the terms of the parties' contract. *Thompson v. Gordon*, 241 Ill. 2d 428, 445 (2011). To ascertain the duties owed by an architect, courts generally look at the terms of the contract between the architect and the contractor that hired the architect. *Id.*; see also *Ferentchak v. Village of Frankfort*, 105 Ill. 2d 474, 480-81 (1985); *McGovern v. Standish*, 33 Ill. App. 3d 717, 719-20 (1976). When negligence is based upon a contractual obligation, the scope of the duty is determined by the terms of the contract. *Ferentchak*, 105 Ill. 2d at 482.

¶ 18    As a threshold matter, Restore Construction argues at various points in its brief that summary judgment was improperly granted because there is a question of fact regarding the legal duties that Onyx Architectural owed. ("Had the [trial] court reviewed the entire testimony of Mr. Searles and construed it strictly against Onyx, there would have been a question of fact that precluded summary judgment regarding Onyx's duty to observe the construction at the project.") However, as stated above, whether a duty for purposes of a negligence claim exists is a question of law. *Marshall*, 143 Ill. 2d at 6. Questions of contract interpretation are also questions of law. *Zubi*, 323 Ill. App. 3d at 32. Here, the summary judgment motion presented a question of contract interpretation and required that the trial court determine whether Onyx Architectural had a legal duty to perform the obligations that Restore Construction alleges it was negligent in performing or failing to perform. No further evidence or weighing of evidence was needed to determine whether Onyx had a legal duty to perform the acts on which Restore Construction's contribution claim was based. The question was a proper subject for a summary judgment motion as it raised a question of law that the court is charged with deciding. Thus, the arguments that Restore Construction raises about the existence of a question of fact precluding summary judgment are misplaced.

¶ 19    We turn to the proper question raised on appeal—whether Onyx Architectural had the legal duties on which Restore Construction's contribution claims are based. Restore Construction predominately bases its argument that Onyx had a legal duty, for purposes of the contribution claim, on the deposition testimony of Stephen Searles. At his deposition, Searles was asked by Onyx Architectural's counsel, "And you did not hire Onyx to inspect the work, including the plumbing work, is that fair?" Searles responded that "the architect typically inspects all work." Searles was also asked if it was his understanding that Onyx was required to look over the work and ensure the work complied with the drawings. Searles responded that it was "a loaded question" before explaining that the architect will generally "look to see from an overall perspective if the work is complete, *but [the architect does not] dive as deep as the plumbing inspector.*"

¶ 20    Restore Construction also points to the deposition testimony of Victor Simpkins, one of Onyx Architectural's principals. Restore Construction claims that Simpkins acknowledged that Onyx had a contractual duty to ensure adherence to the drawings. As it pertains to the contract, Restore Construction points out that there was a "construction observation phase" of the contracted work that accounted for 10% of Onyx's compensation. Restore Construction contends that Searles's testimony, Simpkins' testimony, and the terms of the contract demonstrate that Onyx Architectural had the legal duties relevant to its contribution claim.

¶ 21    We hold that the trial court properly determined that Onyx Architectural did not have a legal duty to perform the acts that Restore Construction alleges it was negligent for failing to perform. Onyx Architectural had no duty to perform plumbing services as alleged, and it had no duty to ensure the specific details of the plumbing work were done in accordance with the drawings it submitted. The contract between Restore Construction and Onyx Architectural did

not require Onyx to control the means and methods of construction. Instead, the contractual documents for the project indicate that the means and methods of construction were to be controlled by Restore as the general contractor, not by Onyx in its provision of architectural services.

¶ 22    The agreement between Restore Construction and Onyx Architectural does not include any requirement that Onyx "inspect" any of the specific work done by other contractors or to serve as a guarantor that the work was being done in accordance with the plans. Onyx had no legal duty to inspect the work or to ensure the work was being done properly. See *Ferentchak*, 105 Ill. 2d at 480-81. Onyx Architectural's obligations under the construction observation phase of the contract are quite limited. Relevant to this case, Onyx agreed to visit the site once weekly and to attend weekly meetings to discuss project progress and adherence to the drawings. The contract did not require Onyx Architectural to perform any acts to ensure that the specific work by the other contractors on the project was being carried out in conformance with the plans. *Block v. Lohan Associates, Inc.*, 269 Ill. App. 3d 745, 767-68 (1993). The contract similarly did not require or even give Onyx authority to take remedial measures to ensure the work was being done in accordance with the plans. Onyx did not have the authority to control the acts of the on-site workers, to control the methods of their performance, or to stop or otherwise control the work on the site. Onyx had no duty to supervise the other contractors or direct their work.

¶ 23    Restore Construction argues that to interpret the contract without imposing a duty on Onyx to ensure the work complied with the plans would make the construction observation phase portion of the contract superfluous. However, there is simply no provision in the parties' agreement that states that Onyx Architectural was required to supervise the contractors' work and ensure that all the work was being done according to the architectural plans. Restore

Construction argues that "Onyx had an obligation to ensure that all the construction work being done, including the plumbing, was being done according to the construction drawings that Onyx was specifically hired to create." It is true that the agreement definitively shows that Onyx was specifically hired to create the plans, but there is no such provision in the contract that shows that Onyx was specifically hired to ensure all the work complied to those plans. See *Thompson*, 241 Ill. 2d at 449-50 (the court cannot "impose[] an obligation on defendants that is not provided for in the contract."). The interpretation of the contract that Restore Construction urges us to adopt is an interpretation that imposes an obligation on Onyx that is not included in its contract with Restore. The parties could have easily included a term in the contract that required Onyx Architectural to inspect all the work on the project and ensure its compliance with the plans and specifications, but they did not. See *Id*. Restore Construction asks us to impose an obligation on Onyx that it was a guarantor of all the other contractors' work on the project. The record does not support the imposition of such a duty.

¶ 24    Searles testified that he did not hire Onyx Architectural to inspect the work, including the plumbing work. He further testified that the entirety of the services he expected Onyx Architectural to perform were the services expressly set forth in the contract. As in *Block*, even though Onyx Architectural was contractually required to make site visits, it was not required to oversee or supervise the other contractors and control the details of their work. *Id*. at 768; see also *McGovern*, 33 Ill. App. 3d at 719-21. Although Restore Construction points to Victor Simpkins' deposition testimony as supportive of its position, Simpkins actually testified that Onyx was not responsible for ensuring adherence to the plumbing drawings, but that instead, the plumber and the general contractor were vested with those responsibilities. The agreement in this case did not create a duty to inspect or a duty to ensure construction was carried out in

accordance with the plans. See *Thompson*, 241 Ill. 2d at 449-50. Since Onyx did not have the legal duties that are the basis for Restore Construction's contribution claim, the trial court properly granted summary judgment in Onyx Architectural's favor.

¶ 25    Restore Construction sets forth two other grounds on which it claims Onyx Architectural should be liable and was not entitled to judgment as a matter of law. Restore Construction contends that Onyx did not make the weekly site visits required by the contract, and it also contends that Onyx failed to secure the building permits within the time agreed upon by the parties.

¶ 26    There is no evidence in the record that supports Restore Construction's claim that Onyx Architectural failed to make the weekly site visits. Victor Simpkins testified that Onyx visited the site weekly. He testified that Onyx made one visit per week at the minimum, but that sometimes the work required more frequent visits. No evidence in the record contradicts Simpkins' assertions. Restore Construction seems to argue for the first time on appeal that Onyx was required to have a licensed architect visit the property each week. However, the contract does not include such a requirement and arguments made for the first time on appeal are waived (*George W. Kennedy Construction Co. v. City of Chicago*, 112 Ill. 2d 70, 77 (1986)).

¶ 27    As for the permitting issue, Restore Construction did not raise the issue in its operative third-party complaint. A party cannot use a motion or a brief on appeal as a substitute for pleading sufficient facts. *Unterschuetz v. City of Chicago*, 346 Ill. App. 3d 65, 73 (2004). In response to the summary judgment motion, Restore Construction made the argument that Onyx Architectural breached the parties' agreement by failing to timely obtain building permits. The contract, however, contains no requirement that Onyx Architectural obtain the permits by any date certain. Under the agreement, Onyx Architectural agreed to assist the owner in completing

11

the permitting process and complete the permitting process by supplying certain information to the City. Nothing in the contract supports Restore Construction's claim that Onyx Architectural had a duty to secure permits by a certain date to comply with its contractual obligations. Moreover, Restore Construction did not at any time request leave to amend its third-party complaint to include a claim relating to the permitting issue. The trial court did not err when it granted Onyx Architectural's motion for summary judgment.

¶ 28                                    CONCLUSION

¶ 29     Accordingly, we affirm.

¶ 30     Affirmed.